IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ENERGY INTELLIGENCE GROUP, INC. and ENERGY INTELLIGENCE GROUP (UK) LIMITED, <br><br> Plaintiffs, <br><br> v. <br><br> LAZARD FRÈRES & CO. LLC, <br><br> Defendant. | Civil Action No. 4:18-cv-02241-VDG |

**DEFENDANT LAZARD FRÈRES & CO. LLC'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS RELATED TO PLAINTIFFS'
<u>FAILURE TO MITIGATE AND THEIR BUSINESS MODEL</u>**

Defendant Lazard Frères & Co. LLC ("Lazard") respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 37(a), to compel Plaintiffs to produce documents and information relevant to Lazard's affirmative defenses, including Plaintiffs' failure to mitigate their losses, and their business practices concerning enforcement of its copyrights.

WHEREFORE, for the reasons in the accompanying Memorandum of Law in Support, Lazard respectfully requests that this Court grant its Motion to Compel Production of Documents Related to Plaintiffs' Failure to Mitigate and Their Business Model.

**TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT ................................................................................... 1

II. SUMMARY OF RELEVANT BACKGROUND ......................................................... 2

III. LEGAL STANDARD .................................................................................................... 5

IV. ARGUMENT .................................................................................................................. 6

    A. Documents Regarding EIG's Litigation Strategy As A Revenue Stream Are Directly Relevant To Lazard's Affirmative Defenses, Including Failure To Mitigate. ........................................................................................ 6

        1. EIG has a financial incentive to litigate rather than mitigate, a fact crucial to Lazard's affirmative defenses. ...................................... 6

        2. Lazard's discovery requests are narrowly tailored to target materials relevant to its affirmative defenses........................................... 10

    B. EIG's Justification For Refusing To Produce The Requested Materials Is Unpersuasive.................................................................................................. 11

        1. EIG's unilateral assertion that Lazard's affirmative defenses are not "legally cognizable" runs counter to the Federal Rules of Civil Procedure and applicable case law. ............................................................ 12

        2. EIG's citation to *EIG v. Kayne Anderson* in defense of its position undercuts its argument. ............................................................................ 13

        3. EIG's objection on the basis of burden is unpersuasive under the circumstances. .......................................................................................... 15

V. CONCLUSION............................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bank One Texas, N.A. v. Taylor*,
   970 F.2d 16 (5th Cir. 1992) ...............................................................................................7

*Clarke v. Epco, Inc.*,
   No. CIV.A. 208-CV-103-KSMTP, 2009 WL 1259460
   (S.D. Miss. May 1, 2009) .................................................................................................12

*Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, LP*,
   No. 4:14-cv-01903, 2017 WL 363004 (S.D. Tex. Jan. 24, 2017) ........................10, 13, 14

*Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, LP*,
   No. 4:14-cv-01903, 2018 WL 2048896 (S.D. Tex. May 2, 2018) .............................passim

*Ford Motor Co. v. Dallas Power & Light Co.*,
   499 F.2d 400 (5th Cir. 1974) .............................................................................................7

*Jesus Ricardo de Hoyos v. C.R. England et al.*,
   No. 5:15-CV-60, 2016 WL 11575123 (S.D. Tex. Apr. 19, 2016) ......................... 5, 6, 12-13

*Malibu Media, LLC v. Guastaferro*,
   No. 1:14-cv-1544, 2015 WL 4603065 (E.D. Va. July 28, 2015) ......................................7

*Malibu Media, LLC v. Zumbo*,
   No. 2:13-cv-729, 2014 WL 2742830 (M.D. Fla. June 17, 2014) ..................................7, 8

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*,
   894 F.2d 1482 (5th Cir. 1990) ...........................................................................................6

*Newby v. Enron Corp.*,
   394 F.3d 296 (5th Cir. 2004) .............................................................................................5

*Pierce v. Ramsey Winch Co.*,
   753 F.2d 416 (5th Cir. 1985) ...........................................................................................10

**Other Authorities**

Fed. R. Civ. P. 26(b) .................................................................................................................6, 15

Fed. R. Civ. P. 26(b)(1) .................................................................................................................12

Fed. R, Civ. P. 37(a) .......................................................................................................................5

Fed. R. Civ. P. 37(a)(4) ...................................................................................................................6

I.      **PRELIMINARY STATEMENT**

This dispute arises over Plaintiffs Energy Intelligence Group, Inc. and Energy Intelligence Group (UK) Limited's (collectively, "EIG") refusal to turn over material that is plainly relevant to the issues of this case. EIG's objections based on relevance and proportionality are insincere in light of the fact that EIG has litigated similar versions of this case over 60 times. In so doing, not only has EIG produced (or been compelled to produce) much of the requested information, but EIG has become intimately familiar with the relevance of the facts concerning the defenses it faces. EIG should not be permitted to unilaterally limit the scope of discovery in this action to only the facts favorable to its case in chief. Such action is particularly inappropriate at this early stage of the case and highly prejudicial to Lazard. To defend itself in this litigation, Lazard must be able to obtain the documents it needs that are in EIG's possession, custody, and control. Despite articulating the relevance of Lazard's discovery requests to its affirmative defenses and attempting to clarify and narrow the scope of its requests, EIG has staunchly refused to produce these materials, opting instead to selectively produce documents that tell only its side of the story.

Specifically, as has been repeatedly made clear to EIG, the materials requested here detail EIG's established business model of suing its customers and using the threat of statutory damages to extract settlement agreements that far exceed the value of the underlying works at issue. Lazard's discovery requests—including requests regarding EIG's procedures concerning its approach to copyright enforcement, EIG's revenues related to its subscription model, and EIG's revenues related to its litigation model, such as settlement and license agreements resulting from nearly identical copyright actions—are directly aimed to discover information regarding Lazard's affirmative defenses, including that EIG has no incentive to mitigate its damages and that it has failed to do so in this case.

Importantly, the requested documents have *already been produced* in other of EIG's copyright infringement actions, including some in this very Court. Some of these documents, which are of public record, detail EIG's plan to use "random entrapment efforts" to "aggressively pursue the rest of [EIG's] large clients with lawsuits . . . [which] appears to have support of board and ownership." As such, the relevance of these materials and their importance to Lazard's case is obvious. It is therefore essential that Lazard have access to these and similar documents evidencing EIG's express business model of litigating rather than mitigating its damages.

Despite the clear relevance of these materials and Lazard's repeated assertion of their importance to this action, however, EIG refuses to produce such documents, unilaterally determining that Lazard's defenses are "not legally cognizable" and therefore not relevant. This position stands in direct contradiction to the relevance standard set forth in the Federal Rules of Civil Procedure. Moreover, EIG faces no little-to-no burden in producing these materials as they have already done so in other litigations, and their probative value certainly outweighs any claimed burden. For these reasons, Lazard respectfully requests the Court grant its Motion to Compel Documents Related to Plaintiffs' Failure to Mitigate and Their Business Model.

**II.    SUMMARY OF RELEVANT BACKGROUND**

On January 8, 2019, Lazard served its first set of discovery requests. On February 8, 2019, EIG responded to Lazard's requests, objecting to a number of the requests on the basis of relevance and over-breadth. *See* Ex. A, EIG's Responses and Objections to Lazard's First Set of Requests for Production. By letter dated March 5, 2019, Lazard responded to each of EIG's specific objections and also unambiguously articulated the relevance of each the categories of documents subject to the instant motion. *See* Ex. B at 2-5. After receipt of EIG's letter response,

dated March 22, 2019, (Ex. C), the parties met and conferred on March 29, 2019, wherein counsel for Lazard restated the relevance of the evidence and discussed the types of documents sought in an attempt to narrow the requests. The parties further exchanged emails on March 30, 2019 and April 5, 2019, though could not resolve the impasse concerning the instant motion. EIG amended select discovery responses on April 18, 2019, maintaining its objections to the materials presently in dispute.[1] *See* Ex. D, EIG's Amended Responses and Objections to Lazard's First Set of Interrogatories, and Ex. E, EIG's Amended Responses and Objections to Lazard's First Set of Requests for Admission.

     Despite asserting the relevance of this material on multiple occasions, EIG continues to refuse to produce this evidence, stating that "[Lazard's] narrative does not amount to a legally cognizable affirmative defense." Ex. C at 4. By taking this position, EIG has unilaterally foreclosed the opportunity for Lazard to assess the viability of its asserted defenses.

---

[1] The parties further met and conferred on May 22, 2019 to clarify Lazard's requests per the Court's recommendation. It became clear that EIG narrowly interpreted RFP No. 28 (which calls for "documents and communications reflecting [EIG's] policies and procedures regarding the commencement of lawsuits and/or other legal actions against [EIG's] customers and/or subscriber") to require only a formal policy. Counsel for Lazard expressed its reading that the request more broadly calls for EIG's procedures regarding its approach to enforcement, and generally described the material sought subject to this motion (consistent with the position it has maintained at all times). Counsel for EIG requested that Lazard make clear the documents it is seeking by drawing examples from other dockets, stating that EIG would consider whether further production was warranted. Lazard sent publicly available documents to counsel for EIG that same day and followed up with counsel again on May 23, 2019. *See* Ex. S. EIG waited until 3:36 PM CDT today to respond, and still refused to provide the requested materials. *Id.* EIG's gameplay is transparently disingenuous, delaying its response to the eleventh hour of Lazard's deadline, thus preventing any meaningful discussion of their offer, which still falls short of the requests herein.

To date, EIG has produced 6,039 documents.[2] Only two of these documents, however, are responsive to the requests at issue here, as detailed with particularity below. The first document, produced in response to RFP No. 28 concerning EIG's approach to copyright enforcement, identifies a concerted strategy by EIG to "enhance[] monitoring efforts" and begin compensating employees for reporting suspected infringement. Ex. F at EIG051163. Notably, EIG did not provide any further communications regarding the genesis of this document, EIG's decisions concerning implementation of the referenced strategy, or more generally, EIG's procedures with respect to enforcement or its monitoring efforts prior to or after the 2010-time period.

The second document, which Lazard learned on the March 29 meet and confer was only produced because it happened to be responsive to other of Lazard's requests, is an internal email with the subject "Weekly Update." *See* Ex. G at EIG009192. Attached to this email are documents reflecting EIG's strategy regarding its subscription model, as well as a sales summary report and an activity monitoring report. *See* Ex. G at EIG009193-98, EIG009200-04, and EIG009206-16. Each of these attachments is directly relevant to Lazard's affirmative defenses, yet when pressed for similar documents on these topics (which are very likely to exist given the fact that the documents were "weekly updates"), EIG refused to make further productions concerning its revenues in any form.[3]

---

[2] By contrast, Lazard has produced over 15,000 documents, including thousands of decade-old documents located on an outdated email platform that required significant effort and expense to restore and produce.

[3] The "Weekly Update" email was sent to EIG board members on their personal email addresses, including EIG CEO Raja Sidawi's aol.com account under the pseudonym Tim Foch. *See* Ex. G. When Lazard followed up with EIG requesting the production of documents from personal email addresses used by key custodians for business purposes, EIG represented that it searched for documents but that no responsive documents existed.

4

As the parties are presently at an impasse, Lazard requests that the Court compel EIG to produce documents regarding its business model, including its financial motivations to pursue litigation over mitigation. Specifically, Lazard requests the Court compel EIG to produce additional documents and information concerning EIG's policies and procedures with respect to copyright enforcement (RFP. No. 28), documents and information concerning revenues associated with its subscription model (RFP Nos. 25, 37, 38, 39, 40, and 41; Interrogatory No. 14), and documents and information concerning revenues associated with its litigation model (RFP Nos. 4, 27, 35, 36, 37, and 39; Interrogatory No. 14).[4] Exs. A, D, and E. Further, if the Court grants any of the relief sought herein, Lazard requests that EIG also be ordered to produce materials from the personal email accounts of its custodians used for business purposes with respect to those requests as well.

## III.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 37(a), Lazard respectfully moves this Court for an Order compelling EIG to produce documents relevant to Lazard's affirmative defenses, particularly failure to mitigate. The scope of discovery to be conducted in a particular case rests within the discretion of the trial court. *Jesus Ricardo de Hoyos v. C.R. England et al.*, No. 5:15-CV-60, 2016 WL 11575123, at *3 (S.D. Tex. Apr. 19, 2016) (*citing Newby v. Enron Corp.*, 394 F.3d 296, 305 (5th Cir. 2004)). The party moving to compel discovery bears the initial burden of showing that the information or materials sought are relevant. *Id*. The burden then shifts to the

---

[4] In addition to the requests that EIG refuses outright, Lazard notes that despite EIG agreeing to produce responsive documents pursuant to RFP No. 28, EIG has only produced one responsive document, as detailed *supra*. Lazard believes EIG's production is insufficient on the basis of documents known to exist and produced in other litigations, but not produced here. *See, e.g.*, Ex. H at EIGvKayne039285 (noting the need for "aggressive tracking of clients suspected of copyright abuse and systematic application of copyright protection software and other detection methods").

party opposing the discovery request to show why the requested discovery should not be permitted. *Id*. To raise a successful objection, the party resisting discovery must show specifically how each discovery request is not relevant or how each question is overly broad, burdensome, or oppressive. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

## IV. ARGUMENT

### A. Documents Regarding EIG's Litigation Strategy As A Revenue Stream Are Directly Relevant To Lazard's Affirmative Defenses, Including Failure To Mitigate.

To properly defend itself in this litigation, Lazard must be afforded the opportunity to collect discovery to support its affirmative defenses. *See* Fed. R. Civ. P. 26(b) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . . Information within this scope of discovery need not be admissible in evidence to be discoverable."). At the heart of Lazard's defenses, and likely the heart of this litigation, is EIG's incentive to sit on its hands and to refuse to mitigate any losses, which it quite successfully achieves through a calculated delay in filing lawsuits to maximize damages and to extract settlements that far exceed the value of the underlying works and its actual damages. Lazard seeks documents to establish these facts, which are directly related to its affirmative defenses, but EIG has refused to produce documents relevant to this topic that are known to exist.

#### 1. EIG has a financial incentive to litigate rather than mitigate, a fact crucial to Lazard's affirmative defenses.

EIG has no incentive to lessen its damages where, as here, it can take advantage of the statutory scheme to extract greater sums from its subscribers through the threat of statutory

6

damages that far exceed the value of the works themselves or EIG's actual damages. This has been EIG's enforcement procedure for nearly fifteen years, and has manifested in EIG filing more than sixty complaints since 2005, two of which are presently before Your Honor.[5]

Failure to mitigate, sometimes referred to as the doctrine of avoidable consequences, "is a fundamental rule of damages which requires the injured party to take advantage of reasonable opportunities to minimize his damages and avoid or prevent loss." *Bank One Texas, N.A. v. Taylor*, 970 F.2d 16, 29 (5th Cir. 1992). "Under the doctrine of avoidable consequences, an injured party with an otherwise valid cause of action who fails to mitigate his damages may not recover those damages shown to have resulted from his failure to use reasonable efforts to avoid or prevent the loss." *Id.* (*citing Ford Motor Co. v. Dallas Power & Light Co.*, 499 F.2d 400, 415 (5th Cir. 1974)).

Lazard believes the withheld evidence will show that EIG does not *want* to mitigate its damages because not doing so is far more lucrative. This knowing and intentional failure to mitigate constitutes a valid affirmative defense, and has been asserted by Lazard here. *See e.g.*, *Malibu Media, LLC v. Zumbo*, No. 2:13-cv-729, 2014 WL 2742830 at *4 (M.D. Fla. June 17, 2014) ("[C]ourts have indeed recognized that knowing failure to stop ongoing copyright infringement amounts to a failure to mitigate."); *Malibu Media, LLC v. Guastaferro,* No. 1:14-cv-1544, 2015 WL 4603065 at *5-6 (E.D. Va. July 28, 2015) (same). These principles apply with equal force in copyright actions. *See Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, LP*, No. 4:14-cv-01903, 2018 WL 2048896, at *6-7 (S.D. Tex. May 2, 2018) (denying EIG's challenge to Kayne Anderson's failure to mitigate defense and endorsing Kayne

---

[5] *See, e.g.*, *Energy Intelligence Group, Inc. et al v. Marathon Oil Corp.*, 4:19-cv-01555-VDG (S.D. Tex. Apr. 29, 2019).

Anderson's citation of the *Malibu Media* cases, stating that "[EIG] presented arguments on [failure to mitigate] and [Kayne Anderson] presented arguments, and [the Court] found [Kayne Anderson's] arguments more persuasive . . . [Kayne Anderson] had a mitigation on damages and mitigation as affirmative defense in the whole case . . . [Kayne Anderson] had better law on it.").

In *Malibu Media v. Zumbo*, the court denied in part the plaintiff's Motion to Strike Affirmative Defenses, finding that failure to mitigate was a proper affirmative defense where the defendant pled that plaintiffs had "purposefully avoided taking sufficient steps to protect their copyrighted material because it is more profitable to allow their subscribers to distribute content and seek judgments and/or settlements from the subscribers." 2014 WL 2742830 at *3. This is similarly true here, where, at least as early as 2005, EIG's business model has been to leverage suits against its customers. *See* Ex. I, at EIGvKayne037705-06.[6] In fact, in a document filed in *Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, LP*, No. 4:14-cv-01903 (S.D. Tex. July 8, 2014), a nearly identical case previously before this Court, Mark Hoff,[7] EIG's former Vice President of Sales and Marketing, explicitly detailed that EIG "acknowledge[s] that our subscription model is an anachronism in the electronic age . . . [but are] defending our 'old' model in 2 ways: 1) suing our clients and 2) leveraging copyright abuse cases with negotiated commercial deals (Enbridge, Wachovia, Jacobs Engineering, etc.) . . . **It's clear from the board**

---

[6] Exhibits H-L, and N-Q are sourced from Plaintiffs' Omnibus Motion In Limine To Exclude Certain Testimony And Materials From Trial in the *EIG v. Kayne Anderson* litigation. *Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, LP*, No. 4:14-cv-01903, Dkt. 171, (S.D. Tex. Apr. 7, 2017).

[7] Defendant is presently unable to confirm the author of Ex. J because the document, which was publicly filed on the *EIG v. Kayne Anderson*, No. 4:14-cv-01903 docket, lacks the metadata that would have otherwise been provided had it been produced to Defendant in this litigation. Based on earlier emails in the thread, Defendant presently believes the top email of Ex. J to be authored by Mr. Hoff.

8

**meeting that Mark [Wellman]'s stated goal is to aggressively pursue the rest of our large clients with lawsuits, and in this appears to have support of board and ownership**." Ex. J (emphasis added); *see also e.g.*, Ex. K, Deposition of former EIG President and Editor in Chief, Tom Wallin, Tr. 278:20-279:2 (Q: So there is a greater revenue stream to EIG from copyright litigation than from valid subscriptions by – from those defendants, correct? . . . A: Absolutely, there is a greater revenue stream . . . ."). EIG has clearly adopted intentional failure to mitigate as a business model because it views infringement actions to be a far more lucrative source of revenue.

Yet, without an exhaustive review of the *EIG v. Kayne Anderson* docket and its many filings, transcripts, and exhibits, Lazard would not have been aware of EIG's nefarious motives. This is because EIG has done everything in its power to avoid producing these documents in this litigation. In fact, there are dozens of relevant documents produced in other litigations that EIG refuses to produce here. *See e.g.*, Ex. H at EIGvKayne039285 (detailing EIG's decreasing profits in its subscription model and desire for "aggressive tracking of clients suspected of copyright abuse and systematic application of copyright protection software and other detection methods"); Ex. L at EIGvKayne002103-04 (detailing EIG's financial motivations, noting that "looking at subscriptions from Singles and Sites there has been a consistent decline over time" and expressing that "[w]hile we have been successful in getting licences [sic] and ongoing revenue streams from some of our cases, we have also 'won' several cases on a purely settlement position"); Ex. I at EIGvKayne037705-06 (detailing EIG's ideas to improving profits through

copyright enforcement efforts). Such documents are responsive to at least RFP Nos. 25, 37, 38, 39, 40, and 41.[8]

Each of these documents evidences EIG's knowing failure to mitigate, yet EIG refuses to produce them here despite their obvious relevance. *Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, LP*, No. 4:14-cv-01903, 2017 WL 363004, at *9 (S.D. Tex. Jan. 24, 2017) (holding that "EIG's actual policies and practices for enforcing their copyrights" are relevant to a mitigation defense). The reason for EIG's refusal to produce these documents is not surprising—they significantly undermine EIG's case. *Pierce v. Ramsey Winch Co.*, 753 F.2d 416, 432 n.22 (5th Cir. 1985) ("Plaintiffs are not entitled to increase their damages through inaction."); *EIG v. Kayne Anderson*, 2018 WL 2048896, at *8-9 (upholding jury verdict finding EIG failed to mitigate its damages). Accordingly, EIG should be ordered to produce these, and similar, documents.

### 2. Lazard's discovery requests are narrowly tailored to target materials relevant to its affirmative defenses.

Importantly, Lazard has served a number of document requests directly targeting categories of documents that inform on EIG's business model and its corresponding failure to mitigate its damages. Specifically, Lazard requested documents and information concerning EIG's policies and procedures with respect to copyright enforcement (RFP. No. 28); documents and information concerning revenues associated with its subscription model (RFP Nos. 25, 37,

---

[8] Lazard notes that while its requests call for material as early as 2008, which may not capture some of these documents even were EIG to produce documents responsive to Lazard's requests, EIG has refused to provide relevant documents other than the 2010 memorandum detailed in Section II from periods within the requested date range. Importantly, EIG has agreed to extend the date restriction with respect to documents related to tracking and monitoring software back to 2004, (Ex. C at 1), and thus Lazard believes a similar extension of time to January 1, 2004 would be appropriate to the extent EIG is ordered to produce additional material subject to the instant motion, particularly given that such documents are already known to exist.

38, 39, 40, and 41; Interrogatory No. 14), and documents and information concerning revenues associated with its litigation model (RFP Nos. 4, 27, 35, 36, 37, and 39; Interrogatory No. 14). *See* Exs. A, D, and E.

To establish that EIG's failure to mitigate is driven by the fact that it can recover far greater sums from copyright infringement lawsuits using the threat of statutory damages than it can from the works themselves, Lazard must obtain evidence on both sides of the equation. First, Lazard must be able to understand what EIG's revenues are with respect to the works themselves (*e.g.*, RFP Nos. 37-41). This must be assessed by analyzing both the licenses at issue and EIG's overall revenues and profits associated with its "subscription model." Second, Lazard must be able to understand the revenues associated with EIG's "litigation model" to compare against EIG's "subscription model" and establish that it is in EIG's financial interest to sue its customers (*e.g.*, RFP Nos. 4, 35, 36, 37, 39).

Each of Lazard's requests is specifically targeted at materials to support portions of this argument. Without this discovery, Lazard will be left scouring the dockets of EIG's many other cases to obtain the materials it needs to prepare for depositions and defend itself in this litigation. This would be burdensome, expensive, and prejudicial to Lazard in this litigation, and as such, Lazard should be permitted to obtain the materials it needs here from EIG, as has been requested.

### B. EIG's Justification For Refusing To Produce The Requested Materials Is Unpersuasive.

Despite Lazard repeatedly articulating the relevance of its requests as well as the types of documents sought, EIG has staunchly refused to produce documents. This refusal runs counter to the Federal Rules of Civil Procedure and applicable case law, including the authority cited by EIG itself. In addition, because EIG has produced most, if not all, of the requested materials in

other litigations, its burden of producing those materials here is non-existent, and EIG should therefore be compelled to produce the materials that Lazard needs to defend itself.

### 1. EIG's unilateral assertion that Lazard's affirmative defenses are not "legally cognizable" runs counter to the Federal Rules of Civil Procedure and applicable case law.

EIG's assertion that Lazard's defense has no merit is illogical, particularly in light of that defense's successful application in other litigations. *EIG v. Kayne Anderson*, 2018 WL 2048896, at *1. In its March 22, 2019 letter to Lazard, EIG expressed its refusal to produce the requested materials, claiming that "[Lazard's] narrative does not amount to a legally cognizable affirmative defense." Ex. C. In addition to this assertion being clearly undercut by EIG's own authority, as detailed in Section IV.B.2, it is axiomatic that a party may not unilaterally assert that a claim or defense is unviable, unpersuasive, or not "legally cognizable" in an effort to restrict the discovery it produces. *See Clarke v. Epco, Inc.*, No. CIV.A. 208-CV-103-KSMTP, 2009 WL 1259460, at *1 (S.D. Miss. May 1, 2009) (granting a motion to compel discoverable materials and noting that a party "may not unilaterally decide what claims are valid and take it upon themselves to limit the scope of discovery accordingly"). As detailed above, Lazard has taken the position that EIG intentionally has failed to mitigate its losses and should be entitled to the discovery related to such a defense. EIG's unilateral assertion that this defense lacks merit is not for EIG to decide—it is for the judge or jury to decide once discovery is closed and Lazard has had the opportunity to adequately present its defense.

Likewise, the ultimate admissibility of any evidence has no bearing on a party's obligation to produce it at this stage of the case. The federal rules make clear that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1); s*ee also Jesus Ricardo de Hoyos v. C.R. England et al.*, No. 5:15-CV-60, 2016

WL 11575123, at *4 (S.D. Tex. Apr. 19, 2016) (granting a motion to compel production of all accident data, including accident data from both substantially similar incidents and non-substantially similar incidents, because "[i]nformation within this scope of discovery *need not be admissible* in evidence to be discoverable") (emphasis in original). The standard is proportionality, which Lazard has established given the relevance of the information sought and the importance to Lazard's defenses. Accordingly, EIG should not be permitted to unilaterally restrict such discovery in furtherance of its own goals.

### 2. EIG's citation to *EIG v. Kayne Anderson* in defense of its position undercuts its argument.

In support of EIG's refusal to produce documents, EIG relies heavily on the contention that revenues and finances are not relevant to Lazard's affirmative defenses—a contention undercut by its own case law. EIG cites, in letters to Lazard and the Court, *Energy Intelligence v. Kayne Anderson*, 2017 WL 363004, at *8 (S.D. Tex. Jan. 24, 2017) for the proposition that "discovery of EIG's revenues and finances . . . is not relevant to Lazard's defenses." *See* Ex. M, EIG May 22, 2019 Letter to the Court. However, this logic does not stand. First, after a jury trial in *EIG v. Kayne Anderson* the jury ultimately found that EIG failed to mitigate its damages thus eliminating 1,607 of the 1,646 works at issue. *See EIG v. Kayne Anderson*, 2018 WL 2048896, at *1. Further, the opinion cited by EIG does *not* state that revenues and finances are not relevant, as EIG claims, but instead holds that testimony regarding compensation to high level employees is not relevant.[9] *See EIG v. Kayne Anderson*, 2017 WL 363004, at *9. The disputed requests are targeted toward EIG's business model and its incentive not to mitigate its damages, not to the

---

[9] The Requests for which this citation would have been more appropriate, although still unpersuasive, are not at issue here. *See* Ex. A, RFP Nos. 29-30 (requesting documents specifically related to compensation).

13

specific compensation paid to its employees. *See* Section IV.A.2, *supra*. Moreover, and perhaps even more crucially, the Court's opinion that EIG relies on in *EIG v. Kayne Anderson* does not rule on the materials at issue here, as evidenced by the fact that documents reflecting EIG's financial information *had already been produced in that litigation. See e.g.*, Exs. N, O, P, and Q.

EIG similarly objects to the production of settlement and license agreements resulting from its many other litigations, resting on the argument that these documents are not relevant to assess damages. *See* Ex. M. This position, however, overlooks Lazard's mitigation argument, as detailed above, and instead focuses on the narrow issue of actual damages. Further, EIG's citation to *EIG v. Kayne Anderson* is unpersuasive, as the Court there was narrowly considering whether to permit Kayne to seek 30(b)(6) deposition testimony regarding a hypothetical license fee, and not whether the agreements were discoverable.[10] *See EIG v. Kayne Anderson*, 2017 WL 363004, at *8. The Court instead found that because there were more reliable license agreements elsewhere, the probative value was outweighed by the prejudice to EIG. *Id.* This is not true here, where the materials are necessary to Lazard's affirmative defense, as detailed above, and thus should be discoverable. EIG's blanket assertion that Lazard only requests these documents to establish EIG's damages ignores Lazard's valid mitigation defense, and instead improperly relies on language in *EIG v. Kayne Anderson* that other sources are more valuable for the specific topic of damages.

---

[10] Defendant notes that courts in other districts have found settlement and license agreements relevant to actual damages, and have required EIG to produce these very documents. Ex. R, *Energy Intelligence Group, et al. v. ING Capital, LLC*, No. 1:16-cv-08344-RJS, Dkt. 48 (S.D.N.Y. Jan. 2, 2018) (ordering EIG to produce settlement agreements from EIG's similar, though not identical, infringement cases).

### 3. EIG's objection on the basis of burden is unpersuasive under the circumstances.

Any attempts to claim that the burden of producing these materials outweighs any relevance of these documents is belied by the fact that EIG has produced most, if not all, of these documents in other litigations, and would suffer no prejudice in re-producing them here. *See* Exs. H-L, and N-R. In the absence of this prejudice, EIG must produce these materials pursuant to the Federal Rules of Civil Procedure, which requires EIG to produce "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b).

Because EIG would suffer no prejudice in producing these materials, and because these materials are clearly responsive to Lazard's affirmative defenses, including EIG's knowing failure to mitigate, Lazard respectfully requests that the Court compel EIG to produce documents related to its litigious business model.

## V. CONCLUSION

For the foregoing reasons, Lazard respectfully requests that the Court grant its Motion to Compel Documents Related to Plaintiffs' Failure to Mitigate and Their Business Model. Specifically, Lazard requests the Court compel EIG to produce additional documents and information concerning EIG's policies and procedures with respect to copyright enforcement (RFP. No. 28), documents and information concerning revenues associated with its subscription model (RFP Nos. 25, 37, 38, 39, 40, and 41; Interrogatory No. 14), and documents and information concerning revenues associated with its litigation model (RFP Nos. 4, 27, 35, 36, 37, and 39; Interrogatory No. 14).

Dated: May 24, 2019

                                Respectfully submitted,

By:   */s/ Michael S. Elkin*
       Michael S. Elkin (*pro hac vice*)
       ATTORNEY-IN-CHARGE
       Thomas Patrick Lane (*pro hac vice*)
       Stacey Foltz Stark (*pro hac vice*)
       WINSTON & STRAWN LLP
       200 Park Avenue
       New York, New York 10166
       Telephone: (212) 294-6700
       Facsimile: (212) 294-4700
       melkin@winston.com
       tlane@winston.com
       sfstark@winston.com

       Richard T. McCarty
       Texas State Bar No. 24074675
       S.D. Tex. Bar No. 1147407
       WINSTON & STRAWN LLP
       1111 Louisiana Street, 25th Floor
       Houston, TX  77002-5242
       Telephone: (713) 651-2600
       Facsimile: (713) 651-2700
       rmccarty@winston.com

       *Counsel for Defendant Lazard Frères & Co. LLC*

**CERTIFICATE OF CONFERENCE**

 I conferred with Steve Ankrom, counsel for Plaintiffs Energy Intelligence Group, Inc. and Energy Intelligence Group (UK) Limited, as detailed in Section II of Lazard's Motion to Compel Documents Related to Plaintiffs' Failure to Mitigate and Their Business Model, and as recently as May 22, 2019, regarding the subject matter of the foregoing Motion, and Mr. Ankrom represented that Plaintiffs would not produce the documents requested by Defendant.

                */s/ Stacey Foltz Stark*
                Stacey Foltz Stark

**CERTIFICATE OF SERVICE**

 I hereby certify that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule 5.1 on May 24, 2019.

                */s/ Michael S. Elkin*
                Michael S. Elkin